UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY DURLEY,

                    Plaintiff,

     v.                                          Case No. 21-cv-1263-pp

DR. CHERYL JEANPIERRE,
RN DIXIE BERRES, ROBERT WEINMAN
and ROBERT RYMARKIEWICZ,

                    Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION (DKT. NOS. 4, 9) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Timothy Durley, who is incarcerated at the Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under the Eighth Amendment. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and his two motions for a preliminary injunctions, dkt. nos. 4, 9, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let an incarcerated plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 9, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $2.33. Dkt. No. 14. The court received that fee on November 22, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.    Screening the Complaint

### A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff has sued Dr. Cheryl Jeanpierre, RN Dixie Berres, Health Services Unit ("HSU") Assistant Manager Robert Weinman and Captain Robert Rymarkiewicz. Dkt. No. 1 at 1. He alleges that all the defendants are employed at Waupun. Id. at 1–2.

At the time of the events described in the complaint, the plaintiff was in the Restricted Housing Unit ("RHU") at Waupun. Id. at 2. He alleges that on July 13, 2021, he notified Jeanpierre, Weinman and Rymarkiewicz that he had gone on a hunger strike. Id. On July 26, 2021, he began a water strike and

3

notified the same defendants. Id. A few days later, on July 29, 2021, the plaintiff passed out while walking around the RHU and hit his head on the cell door. Id. He awoke in the nurse's station, where defendants Jeanpierre, Berres and Rymarkiewicz were "laughing, poking [his] face, saying do[es] this hurt." Id. at 2–3. The plaintiff says there were "other officers present" but does not know their names. Id. Jeanpierre allegedly pointed out that the officers' body cameras were not on and asked whether the officers should keep the plaintiff at the prison or send him to the hospital; the plaintiff says she said this three times. Id. Rymarkiewicz allegedly responded, "[F]uck it let[']s keep him here." Id. The plaintiff alleges that the defendants did not provide him medical treatment for his head injuries, did not perform a CAT scan or other tests to determine the extent of his injury and did not give him an ice bag for his head. Id.

The plaintiff was taken in a wheelchair in the strip cell area in the RHU. Id. The plaintiff asked Rymarkiewicz if he would loosen the plaintiff's handcuffs, which he says were too tight. Id. Rymarkiewicz denied that request and walked off, leaving the plaintiff handcuffed to the wheelchair for over two and a half hours. Id. The plaintiff informed Weinman of everything that had occurred, including severe pain in his head and pain in his wrists, but Weinman did nothing. Id. On August 17, 2021, the plaintiff saw Berres to assess his ongoing hunger strike and water strike. Id. He asked her to adjust his pain medications, which he received before hitting his head, because they were not working for his head pain. Id. Berres refused to do anything unless

the plaintiff allowed her to assess his hunger strike and water strike. <u>Id.</u> The plaintiff said, "no get a court order," and Berres said the doctor would get one. <u>Id.</u> She again told the plaintiff that she wouldn't see him for his pain from hitting his head unless the plaintiff allowed her to assess his hunger strike and the plaintiff again said no. <u>Id.</u> Berres ended the appointment. <u>Id.</u> at 3–4.

The plaintiff alleges that he remains on a hunger strike and water strike, and the HSU was failing to provide him adequate medical care. <u>Id.</u> at 4. He alleges that the HSU's refusal to treat him violates DAI Policy 300.00.57 regarding inmates' hunger strikes and water strikes. <u>Id.</u> He alleges that the prison should place a meal monitor on his door, monitor his fluids through urine testing and weigh him accurately. <u>Id.</u> The plaintiff filed a declaration from Dexter Ewing, another Waupun inmate who corroborates the plaintiff's allegations. Dkt. No. 3.

The plaintiff sues the defendants in their individual capacities for compensatory and punitive damages. Dkt. No. 1 at 4, 6. He also seeks an injunction ordering Waupun to change how it handles inmates' hunger strikes and water strikes and wants the defendants to resign from their positions. <u>Id.</u> at 6–7. Finally, the plaintiff seeks two preliminary injunctions. <u>Id.</u> at 6; Dkt. Nos. 4, 9.

C.    <u>Analysis</u>

The plaintiff alleges that the defendants did not provide him proper medical treatment after he fell and hit his head. The court reviews these allegations under the Eighth Amendment, which "protects prisoners from

prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see Estelle, 429 U.S. at 103. To satisfy the objective component, the plaintiff must show that he had a medical condition "that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837). "Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment." Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010) (citing Estelle, 429 U.S. at 106).

The plaintiff alleges he fell and hit his head, causing him to lose consciousness. He alleges he suffered severe and consistent pain in his head after his fall. The court concludes that the plaintiff's head injury and persistent

pain constituted a serious medical need that satisfies the objective component of an Eighth Amendment claim. See Gutierrez v. Peters, 111 F.3d 1364, 1371 (7th Cir. 1997) (citing Murphy v. Walker, 51 F.3d 714 (7th Cir. 1995)) (detainee who alleged he suffered a "severe head injury from slip and fall" stated claim for inadequate medical treatment); Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002) (allegations of severe and persistent pain may satisfy objective component).

Whether the plaintiff's allegations satisfy the subjective component is a closer call. The plaintiff alleges that when he regained consciousness, Jeanpierre, Berres and Rymarkiewicz were laughing and poking his face. He says Rymarkiewicz, though not a medical professional, told the doctor and nurse not to send the plaintiff to a hospital. The plaintiff says the defendants left him alone in a wheelchair for hours. They did not give him ice for his head and did not perform any tests to determine the extent of his injury. That the defendants did not perform certain tests or send the plaintiff to a hospital does not, on its own, show deliberate indifference to his medical condition. See Berry, 604 F.3d at 441 (citing Estelle, 429 U.S. at 106). Similarly, the plaintiff alleges that Berres conditioned treatment for his pain on the plaintiff allowing her to address his hunger strike and water strike. That may have been "a permissible decision under contemporary medical standards," or it may have been an impermissible condition "to teach [the plaintiff] a lesson about the consequences of self-destructive behavior." Eagan v. Dempsey, 987 F.3d 667,

7

Case 2:21-cv-01263-PP   Filed 05/27/22   Page 7 of 21   Document 20

692 (7th Cir. 2021). It is not the court's role to determine what treatment is appropriate or whether the medical professionals' decisions were appropriate.

The plaintiff's allegations that the doctor and nurse provided *no treatment* for his head injury and pain, however, go beyond a difference of opinion or possible medical malpractice. Those allegations suggest that the defendants knew the plaintiff fell, hit his head and was experiencing severe pain but disregarded the potential risk to his health or safety by laughing off his injury and sending him away without assessing or addressing his condition. Without deciding what treatment was appropriate, the court finds that the plaintiff's allegations that he did not receive *any* treatment satisfy the subjective component of an Eighth Amendment claim. The plaintiff may proceed on this claim against Jeanpierre and Berres.

The plaintiff cannot state a claim against Rymarkiewicz for not providing adequate medical treatment because Rymarkiewicz is not a medical professional. Non-medical officials are entitled to "rely on the expertise of medical personnel" and "will generally be justified in believing that the prisoner is in capable hands." Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011) (citing Greeno, 414 F.3d at 656). Rymarkiewicz could be liable, however, if he had sufficient notice of "an excessive risk to inmate health or safety" but failed to take any action to address that risk. Id. (quoting Vance v. Peters, 97 F.3d 987, 993 (7th Cir. 1996)). The plaintiff alleges that Rymarkiewicz was present when he regained consciousness, suggesting that Rymarkiewicz knew about the plaintiff's fall and injury. Yet Rymarkiewicz made the decision not to send

the plaintiff to a hospital, wheeled him to the strip cell and left him alone and handcuffed to the wheelchair for several hours. Even though Rymarkiewicz is not a medical professional, his alleged decision not to provide the plaintiff medical attention and leave him unattended suggests deliberate indifference to the plaintiff's needs after his fall. The court will allow the plaintiff to proceed against Rymarkiewicz on his claim of deliberate indifference.

The plaintiff also alleges that when he regained consciousness, "other officers" were present, but he does not know their names. The plaintiff did not list these officers as defendants in the caption of his complaint. But to the extent the plaintiff wishes to proceed against these officers, he has not stated a claim. Unlike in his allegations against Rymarkiewicz, the plaintiff has not alleged that these officers made any decision regarding his treatment. Nor has he alleged that these officers were aware of his pain and refused to refer his complaints or concerns to a medical professional. The plaintiff has not suggested that the officers had any reason to know whether the plaintiff's medical treatment was adequate. That the officers were in the area when the plaintiff regained consciousness, without more, does not constitute an Eighth Amendment violation. The court will not allow the plaintiff to proceed against the unknown officers.

The plaintiff alleges that Weinman refused to respond to his HSU requests or provide him adequate medical attention when he was left unattended in the strip cell. These allegations also suggest a claim of deliberate indifference under the Eighth Amendment. See Farmer, 511 U.S. at 834;

Estelle, 429 U.S. at 104. Like his claim about inadequate medical treatment, the plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm" and that Weinman disregarded that risk. Farmer, 511 U.S. at 834.

For the reasons discussed above, the court finds that the plaintiff's allegations about his fall and head injury satisfy the objective component of an Eighth Amendment claim. Whether the plaintiff's allegations against Weinman satisfy the subjective component is another close call. The plaintiff alleges that he contacted Weinman about "the situation," but that Weinman did not take any corrective action. Dkt. No. 1 at 3. If it is true that the plaintiff directly contacted Weinman, and Weinman refused to respond or provide any medical attention, the court would conclude that the allegations satisfy the subjective component: Weinman would have known about the plaintiff's mistreatment and disregarded it by failing to provide treatment. But if the plaintiff contacted only *the HSU* about his mistreatment, perhaps by filing a request for health services, Weinman is not necessarily to blame for the plaintiff's lack of treatment. Requests to the HSU do not necessarily go to the HSU manager or assistant manager. If another staff member in the HSU received the plaintiff's request for help and declined to provide him treatment, that staff member—not Weinman—would be the one potentially liable to the plaintiff. That is because §1983 does not allow suits for vicarious liability against supervisors based on the action (or inaction) of their subordinates. Iqbal, 556 U.S. at 676; see Day v. Subsecretario del Sistema Penitenciario Federal, 838 F. App'x 192, 193 (7th

Cir. 2021) ("Supervisors are responsible for what they do themselves, not for what their subordinates do.").

Although the plaintiff's allegations on this point are not clear, the court must accept as true the plaintiff's allegations that he contacted Weinman—not the HSU or someone in else in the HSU—about the lack of medical treatment. Construing the allegations in the light most favorable to the plaintiff, the court concludes that the complaint satisfies the subjective component of an Eighth Amendment claim. The plaintiff may proceed on this claim against Weinman. The court advises the plaintiff that to succeed on this claim, he will need to provide evidence that Weinman himself was aware of and disregarded the plaintiff's condition.

The court analyzes the plaintiff's allegations about the tight handcuffs as a claim of excessive force under the Eighth Amendment. To state a claim for excessive force, the plaintiff must show both that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991)). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6 (citing Whitley v. Albers, 475 U.S. 312, 320–21 (1986)).

The plaintiff says that Rymarkiewicz tightly affixed handcuffs and that the plaintiff was wheeled to a strip cell. He told Rymarkiewicz the handcuffs were too tight and asked him to loosen them, but Rymarkiewicz refused. The

plaintiff alleges that he later suffered hand and wrist pain from the handcuffs. While correctional officers may use handcuffs to restrain an incarcerated person who poses a threat of flight or injury, they may not do so to inflict unnecessary pain or injury. See Ajala v. Tom, 658 F. App'x 805, 806–07 (7th Cir. 2016) (citing Hope v. Pelzer, 536 U.S. 730, 737–38 (2002)). The complaint does not make clear whether the plaintiff posed a risk of threat or injury to Rymarkiewicz or anyone else. But the complaint does allege that the plaintiff was alone in a wheelchair on the RHU after falling and hitting his head. It seems unlikely the plaintiff needed to be restrained with handcuffs closed so tightly that they injured his hands and wrists. The plaintiff's allegations that he told Rymarkiewicz the handcuffs were hurting him and that he later suffered lasting pain from the handcuffs states a claim of excessive force. The court will allow the plaintiff to proceed on this claim against Rymarkiewicz.

The plaintiff may not proceed on a claim that the defendants' treatment of his hunger strike and water strike violated prison policy. Section 1983 "protects against 'constitutional violations, not violations of . . . departmental regulation[s] and . . . practices.'" Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) (quoting Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003)). An allegation that defendants failed to follow DAI Policy does not state claim for relief under §1983.

The court will allow the plaintiff to proceed on the following Eighth Amendment claims: 1) deliberate indifference for providing inadequate medical treatment against Jeanpierre and Berres; 2) deliberate indifference to the

plaintiff's need for medical attention or treatment against Rymarkiewicz and Weinman; and 3) excessive force against Rymarkiewicz.

### III.    Motions for Preliminary Injunction (Dkt. Nos. 4, 9)

To obtain preliminary injunctive relief, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). If the plaintiff can establish those three threshold factors, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. See Wood, 496 F.3d at 622; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

### A.    Criminal Charges Against Defendants (Dkt. No. 4)

The plaintiff first seeks an injunction ordering Waupun officials to contact the Dodge County Sheriff's Office to allow the plaintiff to file criminal charges against the defendants for poking him in the face on July 29, 2021, and against Rymarkiewicz for tightly handcuffing him. Dkt. No. 4 at 1–2. The plaintiff says he wrote to the sheriff's office about his allegations and told a

judge in Dodge County. Id. at 3. He also says he reported the misconduct to his family and a prisoner advocate. Id.

The plaintiff filed several exhibits in support of his motion. Dkt. No. 8. These exhibits include communications with Peg Swan, founder of the Forum for Understanding Prisons. Id. at 1, 20. Swan advises the plaintiff to contact the Dodge County Sheriff's Office to report the alleged assault and lists the address and phone number for the Sheriff's Office. Id. at 20. The plaintiff also included two requests for information detailing the defendants' alleged assault on him. Id. at 21–22. In those requests, the plaintiff says he contacted the Sheriff's Office but was told to ask the prison for assistance in filing the charges. Id. A Waupun staff member responded but noted there was no incident report about the defendants' alleged assaults. Id. at 22. The staff member notes that staff found the plaintiff unresponsive "and acted in a way that best ensured [his] health was guarded." Id. at 21. The staff member advises the plaintiff that he may contact law enforcement if he so wishes. Id.

The plaintiff also included an inmate complaint report for a grievance he filed, though he did not include the grievance itself. Id. at 23–27. An institution complaint examiner summarizes the plaintiff's grievance as complaining that prison staff "will not contact the Sheriff's office for him regarding pressing charges on staff." Id. at 24. The complaint examiner notes that the Warden communicated with the plaintiff about his claims, and the plaintiff refused to cooperate with the Warden's request for more information. Id. The complaint examiner recommends rejecting the complaint as frivolous. Id. The Warden

accepted the recommendation and advised that the plaintiff "maintains the option to write to the Sheriff's Office if he wishes to do so." Id. at 26.

The court will deny the motion for a preliminary injunction for two reasons. First, the plaintiff has not alleged an ongoing constitutional violation. He alleges only that the defendants harmed him in the past. Injunctive relief is not available to remedy a concluded violation of law. See Kress v. CCA of Tennessee, LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)) ("[U]nder § 1983, declaratory or injunctive relief is only proper if there is a continuing violation of federal law."); Al–Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir. 1991) ("When there is no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers.").

Even if the alleged harm were ongoing, this court has no power to order a criminal prosecution of another person—that is a decision for a prosecutor. See Benedict v. Eau Claire Area Sch. Dist., No. 08-CV-667-SLC, 2009 WL 440911, at *1 (W.D. Wis. Feb. 23, 2009) (quoting United States v. Batchelder, 442 U.S. 114, 124 (1979)) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."). Nor does the plaintiff have the "right to compel a criminal prosecution" of any other person, even if the plaintiff believes he was wronged. Wimberly v. Julius, 606 F. App'x 309, 311 (7th Cir. 2015) (citing Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 768 (2005), and Sandage v. Bd. of Comm'rs of Vanderburgh Cty., 548 F.3d 595, 597 (7th Cir. 2008)). The plaintiff's own exhibits show that the prison attempted to assist him in filing charges by

requesting more information from him and advising him to contact the Dodge County Sheriff's Office. If the plaintiff wishes to seek criminal charges against the defendants, he must follow those instructions and cooperate with prison staff. This court cannot pursue those charges on his behalf, nor will it order the prison to do so.

B. Force Feeding (Dkt. No. 9)

The plaintiff's second request for a preliminary injunction seeks a court order "to ensure that the Plaintiff receives proper medical care" by ordering the prison to administer intravenous fluids. Dkt. No. 9 at 1. The plaintiff alleges that he faces irreparable harm "because of the nature of the injury," which he says includes pain, stiffness and throbbing in his head and face. Id. at 3. He asserts that the balance of hardships favors him because of his "enormous" suffering, id., and because if his request is successful, the defendants will have to remove him from his cell and force feed him intravenously, "something that the Defendants do and are obligated to do," id. at 4. He asserts he is likely to succeed on the merits because he is 6'0" tall but weighs only 150 pounds. Id. He says he is refusing the Ensure drink the prison provides him and is "flushing the food down the toliet [sic]." Id. Last, he asserts that "it is always in the public interest for prison officials to obey the law especially the constitution [sic]." Id. at 4–5.

The court will deny this motion. Although the plaintiff asserts that he "has a great likelihood to succeed on the merits," the court cannot reach the same conclusion. The plaintiff must show more than "a mere possibility of

success" to demonstrate his entitlement to a preliminary injunction. Ill. Republican Party v. Pritzker, 973 F.3d 760, 762 (7th Cir. 2020), cert. denied, 141 S. Ct. 1754 (2021). To obtain a preliminary injunction, he must make a "'strong' showing" that he is likely to succeed, which "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." Id. at 763. The plaintiff does not explain how he will succeed on his claims. He cites Estelle v. Gamble, 429 U.S. 97 (1976) for the proposition that interfering with medical treatment constitutes deliberate indifference. Dkt. No. 9 at 4. Although that is true, the plaintiff does not explain how he will satisfy the standard from Estelle and prove that the defendants were deliberately indifferent to his serious medical issue. See Estelle, 429 U.S. at 103–04. Many of the plaintiff's claims are close calls; while the court is allowing him to proceed on those claims beyond screening, the standard to proceed beyond screening is lenient and favors the plaintiff. See Cesal, 851 F.3d at 720; Fed. R. Civ. P. 8(a)(2). This decision does not address the merits of the plaintiff's claims. To succeed on the merits, the plaintiff will need supporting evidence, not mere allegations. See Nelson v. Stevens, 861 F. App'x 667, 670 (7th Cir. 2021); Fed. R. Civ. P. 56(c). The plaintiff filed the affidavit of another inmate, which bolsters his allegations. Although that suggests that the plaintiff may have some evidence to support his claims, it does not demonstrate that he is likely to succeed on the merits of his claims. Nor does it explain how the plaintiff expects to prove the key elements of his claims.

The court also cannot conclude that the plaintiff faces irreparable harm without the injunction. The plaintiff alleges that he has experienced pain, stiffness and throbbing in his head and neck. But those symptoms relate to his head injury. He has not alleged that he is experiencing any symptoms related to his hunger and water strike. He alleges that he weighs only 150 pounds, but he does not indicate what he weighed before he began the strikes. That he weighs 150 pounds but is six feet tall does not necessarily mean his health is in danger. See Freeman v. Berge, 441 F.3d 543, 546 (7th Cir. 2006) (noting that an inmate on a hunger strike could impair his health "even if his ending weight was 'normal' (imagine a person whose weight falls from 250 to 150 pounds in a couple of months)"). Although it is possible that the plaintiff is at an unhealthy weight or will be without force-feeding, the plaintiff bears the burden to persuade the court that he faces irreparable harm without the injunction. He has not done so here.

Because the plaintiff has not demonstrated a reasonable likelihood of success on the merits or that he faces irreparable harm, he has not satisfied the "threshold showing" necessary for a preliminary injunction. The court does not need to address the other prerequisites to obtain a preliminary injunction. See Cassell v. Snyders, 990 F.3d 539, 544–45 (7th Cir. 2021) (citing Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008), abrogated in part on other grounds by Pritzker, 973 F.3d at 762–63). The court will deny the second motion for a temporary preliminary injunction.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motions for a preliminary injunction. Dkt. Nos. 4, 9.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Jeanpierre, Berres, Weinman and Rymarkiewicz. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$347.67** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing the case without

further notice.

Dated in Milwaukee, Wisconsin this 27th day of May, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**